IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOSEPH THOMAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:14-cv-4530-B-BN |
| | § | |
| TARA JACKSON, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for pretrial management pursuant to 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Jane J. Boyle. The undersigned issues the following findings of fact, conclusions of law, and recommendation that the Court should grant Defendant Tara Jackson's Motion for Summary Judgment [Dkt. No. 18].

**Background**

Plaintiff Joseph Thomas originally brought this *pro se* 42 U.S.C. § 1983 action against the Dallas Housing Authority ("DHA"), the U.S. Department of Housing and Urban Development, Tara Jackson (identified as a DHA caseworker), and Cindy Quezada (identified as a Jackson's supervisor). The Court summarily dismissed the claims against the DHA, HUD, and Quezada pursuant to 28 U.S.C. § 1915(e)(2)(B) but allowed to proceed a Section 1983 claim based on equal protection (gender discrimination) against Jackson. *See* Dkt. Nos. 8 & 9; *Thomas v. Dallas Hous. Auth.*,

No. 3:14-cv-4530-B-BN, 2015 WL 2192785 (N.D. Tex. May 11, 2015).

As to Defendant Jackson, Plaintiff claims that he is entitled to relief under Section 1983 because Jackson, shortly after taking over his case, stated during a meeting between the two of them that "single men, whether with children or not, shouldn't be on public assistance." Dkt. No. 7 at 6; *see also* Dkt. No. 23 at 4. Plaintiff claims that this verbal statement shows that Jackson's alleged subsequent "manipulation of his case file" and "personal agenda" against him were motivated by impermissible gender bias. Dkt. No. 23 at 3. This alleged "manipulation" primarily consisted of (1) Jackson's causing Plaintiff's rent to increase, which, according to Plaintiff, would ultimately result in Plaintiff having to breach his contract with the DHA, and (2) Jackson's preventing Plaintiff from entering the Family Self-Sufficiency Program. *See* Dkt. No. 8 at 2-3.

Jackson in her answer asserted that she is entitled to qualified immunity on Plaintiff's claims, and she has now moved for summary judgment on the grounds that (1) Plaintiff failed to establish that she violated Plaintiff's equal protection rights and (2) her actions were at all times objectively legally reasonable. *See* Dkt. No. 14; Dkt. No. 19 at 2. The Court ordered Plaintiff to file a response to indicate whether he needed limited discovery in order to respond to the Jackson's qualified immunity defense. *See* Dkt. No. 21. Plaintiff did not file a motion for leave to conduct limited discovery, but he did file a response opposing the summary judgment motion, in which Plaintiff reiterated his allegations against Jackson and attached several documents. *See* Dkt. No. 23. The Court then ordered Plaintiff to file a second response, to address

-2-

Jackson's qualified immunity arguments. *See* Dkt. No. 24.

Plaintiff has failed to file such a response, and the deadline to do so has passed. *See id.* Jackson, on the other hand, has filed a reply to Plaintiff's initial response. *See* Dkt. No. 25.

**Legal Standards**

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (in turn quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); some internal quotation marks omitted). This "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013) (per curiam) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011); internal quotation marks omitted); *see also Mullenix*, 136 S. Ct. at 308 ("[a] clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right'" (quoting *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012))).

While review of a motion for summary judgment based on qualified immunity is accomplished in two steps, a court may conduct the required two-step examination in any order. *See Pearson*, 555 U.S. at 236; *see also Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 469 (5th Cir. 2014) (there is "discretion to decide which of the two steps of qualified immunity to address first").

Regardless of which prong is addressed first, a court must decide "whether the facts, taken in the light most favorable to the plaintiff, show the officer's conduct violated a federal constitutional or statutory right." *Luna v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014) (citing *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014) (per curiam); *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004)), *reversed on other grounds*, 136 S. Ct. 305 (2015). Put differently, under the first prong, a court simply must decide "whether the plaintiff has alleged a violation of a constitutional right." *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008).

A court also must decide "whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores*, 381 F.3d at 395. This second prong of the analysis requires a court to determine "whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident." *Charles*, 522 F.3d at 511. That is, even if a government official's conduct violates a clearly established right, the official remains entitled to immunity if his conduct was objectively reasonable. *See Davis v. McKinney*, 518 F.3d 304, 317 (5th Cir. 2008); *see also Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) ("The dispositive inquiry, we have said, is whether it would have been clear to a reasonable officer in the [defendants'] position that their conduct was unlawful in the situation they confronted." (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001); internal quotation marks and brackets omitted from original)).

To determine whether the law at the time of an incident was clearly established, even if the Court assumes that each right that a plaintiff asserts did apply in his case,

each right must be defined at the appropriate level of specificity. While "'a case directly on point'" is not necessarily required to "conclud[e] that the law is clearly established, '[ ] existing precedent must have placed the statutory or constitutional question beyond debate.'" *Stanton*, 134 S. Ct. at 5 (quoting *al-Kidd*, 131 S.Ct. at 2083). The Court also may not "'define clearly established law at a high level of generality,' since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (quoting *al-Kidd*, 131 S. Ct. at 2084); *accord Mullenix*, 136 S. Ct. at 308 ("The dispositive question is whether the violative nature of *particular* conduct is clearly established." (citation and internal quotation marks omitted; emphasis in original)).

Essential to the "clearly-established inquiry is 'fair warning'"; thus, the Court is required to "ask 'not only whether courts have recognized the existence of a particular constitutional right, but also ... whether that right has been defined with sufficient clarity to enable a reasonable official to assess the lawfulness of his conduct.'" *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (en banc) (respectively quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *McClendon v. City of Columbia*, 305 F.3d 314, 331 (5th Cir. 2002) (en banc) (per curiam)).

In sum,

> [w]hen deciding whether the right allegedly violated was "clearly established," the court asks whether the law so clearly and unambiguously prohibited the conduct that every reasonable official would understand that what he is doing violates the law. Answering in the affirmative requires the court to be able to point to controlling authority – or a robust consensus of persuasive authority – that defines the contours of the right in question with a high degree of particularity.

> This requirement establishes a high bar. When there is no controlling authority specifically prohibiting a defendant's conduct, the law is not clearly established for the purposes of defeating qualified immunity.

*Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013) (citing *Morgan*, 659 F.3d at 371-72; internal citations and quotation marks omitted).

Once a defendant invokes his entitlement to qualified immunity, "the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon*, 305 F.3d at 323; *see Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997) ("We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs." (internal quotation marks omitted)); *Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014) ("Once the defendant raises the qualified immunity defense, 'the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.'" (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008))); *see also Brooks v. City of West Point*, 18 F. Supp. 3d 790, 794 (N.D. Miss. 2014) ("The usual summary judgment burden of proof is altered somewhat in the case of a qualified immunity defense." (citing *Gates v. Tex. Dep't of Prot. & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008))).

The qualified immunity defense is appropriately resolved at the summary judgment stage when (1) a plaintiff has established that the defendant has engaged in the complained-of conduct or (2) the court "skip[s], for the moment, over ... still-contested matters to consider an issue that would moot their effect if proved." *Haverda v. Hays County*, 723 F.3d 586, 599 (5th Cir. 2013). "'If resolution of [qualified

immunity] in the summary judgment proceedings turns on what the defendant actually did, rather than on whether the defendant is immunized from liability ..., and if there are conflicting versions of his conduct, one of which would establish and the other defeat liability, then the case is inappropriate for summary judgment.'" *Haverda*, 723 F.3d at 599 (quoting *Barker v. Norman*, 651 F.2d 1107, 1123-24 (5th Cir. Unit A July 1981)).

Accordingly, a court's qualified immunity inquiry at the summary judgment stage requires that the court "accept the plaintiff's version of the facts (to the extent reflected by proper summary judgment evidence) as true." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004); *see also Tolan*, 134 S. Ct. at 1863 ("[I]n ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."); *cf. Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007) ("Thus, a defendant challenging the denial of a motion for summary judgment on the basis of qualified immunity 'must be prepared to concede the best view of the facts to the plaintiff and discuss only the legal issues raised by the appeal.'" (quoting *Gonzales v. Dallas Cnty., Tex.*, 249 F.3d 406, 411 (5th Cir. 2001))); *Fuentes v. Riggle*, 611 F. App'x 183, 189, 190 (5th Cir. 2015) (per curiam) (A court of appeals "can review the materiality of any factual disputes, but not their genuineness.... [D]eciding whose version of the facts must be accepted falls squarely within the realm of a dispute as to genuineness." (citations, quotation marks, and emphasis omitted)).

"Although summary judgment may be appropriate based on a plaintiff's inability

to prove the facts essential to recovery, this has 'nothing to do with the qualified immunity defense.'" *Haverda*, 723 F.3d at 599 (quoting *Barker*, 651 F.2d at 1124)). "[I]mmunity ... [is] an entitlement distinct from the merits of the case." *Good v. Curtis*, 601 F.3d 393, 397 (5th Cir. 2010) (citation and quotation marks omitted).

## Analysis

Defendant Jackson argues that Plaintiff has "fail[ed] to establish ... any deprivation of [his] rights" under the Fourteenth Amendment's Equal Protection Clause. Dkt. No. 19 at 2, 8.

The Equal Protection Clause prohibits a state from "'deny[ing] to any person within its jurisdiction the equal protection of the laws,'" which "'is essentially a direction that all persons similarly situated should be treated alike.'" U.S. CONST. amend. XIV, § 1; *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 212 (5th Cir. 2009) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). In an equal protection claim, a plaintiff typically alleges that he "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Club Retro*, 568 F.3d at 212 (internal quotation marks omitted).

Plaintiff makes much of Jackson's alleged statement that single men should not be on public assistance. *See* Dkt. No. 23 at 2 ("It was only because of Tara Jackson's statement that this suit has been placed before the court."). But a statement alone does not constitute an equal protection violation. *See Club Retro*, 568 F.3d at 213. Nor can it demonstrate the requisite discriminatory intent where the statement merely reveals

the bias or prejudice of the individual official that utters it. *See id.* (holding that allegations that defendant police officers used racial profanity were immaterial where "plaintiffs [did] not allege[] that any defendant made a statement that he targeted Club Retro because it was minority-owned and attracted a mixed-race and mixed-ethnicity crowd"). Thus, the allegation that Jackson merely stated that single men should not receive public assistance does not amount to an equal protection violation.

Plaintiff also has neither alleged nor shown that he has been treated differently from others similarly situated. *See id.* at 212. No equal protection violation occurs where a plaintiff's allegations "fail[] to allege any facts showing that [others were] similarly situated." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 414 (5th Cir. 2015) (citing *Club Retro*, 568 F.3d at 213). To the contrary, Jackson has introduced evidence that the rent increase suffered by Plaintiff occurred not because of impermissible discrimination against his gender but rather as a result of a request by Plaintiff's landlord for an increase in rent as well as recent changes to DHA policy.

The landlord based his request for a rent increase from $836.00 per month to $1,000.00 per month on several factors, including an increase in the fair market value of the property. *See* Dkt. No. 20 at 9-12. The request was granted by another DHA employee, without any participation by Jackson. *See id.* at 4-5, 11. Nonetheless, at the time of the rent increase, Plaintiff's payment obligation remained at $0.00. *See id.* at 12. Several months later, however, a change in DHA's occupancy standards rendered Plaintiff "over-housed," which caused his payment obligation to increase from $0.00 to $232.00 and further caused his utility allowance to decrease from $175.00 to $0.00. *See*

*id.* at 5-6, 22, 26.

This evidence demonstrates that the changes made to Plaintiff's rent were not because of invidious discrimination on the part of Jackson but pursuant to the policies and procedures of the DHA.

Additionally, Jackson negates Plaintiff's claim that she prevented his entry into the Family Self-Sufficiency Program by introducing evidence that Plaintiff was in fact admitted into the program. *See id.* at 13-14.

Plaintiff has introduced nothing to rebut or contradict the evidence submitted by Jackson, nor has he submitted evidence that shows that Jackson discriminated against him based on gender. Therefore, Plaintiff has not met his burden to overcome Jackson's claim to qualified immunity by proving that Jackson violated his clearly established rights under the Equal Protection Clause. *See Mullenix* 136 S. Ct. at 308. And Jackson's undisputed evidence confirms that no such violation occurred.

Neither has Plaintiff demonstrated that Jackson's actions were not objectively reasonable, whereas Jackson's affidavit attests, and attached documents confirm, that her actions pertaining to Plaintiff's case were at all times pursuant to the policies of the DHA and her official duties as a DHA employee, and thus her actions were objectively reasonable. *See* Dkt. No. 20 at 5-6, 22, 26.

## Recommendation

For all of the reasons stated above, the Court should grant Defendant Jackson's Motion for Summary Judgment [Dkt. No. 18] and dismiss Plaintiff's remaining claim with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: February 5, 2016

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE